**DANAHER CORPORATION, DH Acquisition Corp. and Danwest Partners, Plaintiffs,**

**v.**

**CHICAGO PNEUMATIC TOOL COMPANY, Thomas P. Latimer, G. Russell Moir, Barry J. Shillito, John R. Kennedy, Jr., Andrew Schultz, Jr., Edmund J. Kelly, Melvin R. Laird and David G. Moore, Defendants.**

**John D. SPEARS, Plaintiff,**

**v.**

**Thomas P. LATIMER, G. Russell Moir, Barry J. Shillito, John R. Kennedy, Jr., Andrew Schultz, Jr., Edmund J. Kelly, Melvin R. Laird, David G. Moore, and Chicago Pneumatic Tool Company, Defendants.**

**William E. BROCK, Secretary of United States Department of Labor, Plaintiff,**

**v.**

**Thomas P. LATIMER, Chicago Pneumatic Tool Company, and Chicago Pneumatic Tool Employee Stock Ownership Plan and Trust, Defendants.**

Nos. 86 Civ. 2357 (PNL), 86 Civ. 2448 (PNL) and 86 Civ. 2893 (PNL).

United States District Court,
S.D. New York.

May 13, 1986.

Skadden, Arps, Slate, Meagher & Flom, New York City, (Jerome S. Hirsch, Robert E. Zimet, George A. Zimmerman, Marco E. Schnabl, Charles F. Walker, of counsel), for Danaher Corp.

White & Case, New York City (Thomas McGanney, Dwight Healy, James Laughlin, of counsel), for Chicago Pneumatic Tool Co.

Lowey, Dannenberg & Knapp, New York City (Neil Selinger, Henry Brachtl, of counsel), for John D. Spears.

William J. Walderman, Stephen Kessler, Diane Dresdale, Attys., U.S. Dept. of Labor, Office of the Sol. Plan Benefits Security Div., Washington, D.C. (Louis L. Joseph, Counsel for Fiduciary Litigation, Patricia Rodenhausen, Regional Sol., of counsel), for William E. Brock.

LEVAL, District Judge.

## FACTS

On April 9, 1986, the Secretary of Labor brought this action seeking removal of Thomas F. Latimer as trustee of the em-

ployee stock ownership plan ("ESOP") of Chicago Pneumatic Tool Co. ("CP") and the appointment of a receiver. At the time there was pending before the court Danaher Corporation's action and motion seeking rescission of CP's transfer of one million shares of its stock to its ESOP. The Labor Department's motion for a temporary restraining order was heard on Thursday morning, April 10 at 9:00 a.m., at which time the court entered its ruling denying the preliminary relief sought by Danaher. The discussion in my opinion of April 10 is here incorporated by reference.

At the April 10 hearing, the Labor Department argued that Latimer's conduct in receiving the one million shares into the Plan had breached his fiduciary duties, requiring his removal as trustee. I had already rejected similar contentions in denying Danaher's motion for rescission of the transfer. I asked the Department whether its application for Latimer's removal was based on objections of conflict resulting from his status as Chief Executive Officer of CP, or only on allegations of misconduct. The Department, at the time, expressly disavowed contentions based on status, arguing only misconduct. The Department's application for a TRO was denied. The evidence showed that the one million share funding of the ESOP had been planned and set in motion prior to Danaher's acquisitions; it was not shown to have been a subterfuge done to fight off an invader. Nor did I accept the Labor Department's argument that Latimer's acceptance of shares into the plan after their recent price increase constituted breach of fiduciary duties; this was done pursuant to previous plans made in good faith without reference to or knowledge of Danaher's takeover ambitions.

Danaher meanwhile pursued its tender offer for CP stock, amending the terms by dropping the condition that a court order rescission of the million share ESOP funding and by seeking the tender of those million shares.

On Thursday, April 17, the Labor Department made new submissions, and counsel were heard that evening. The Department argued that irrespective of whether Latimer's prior conduct had breached fiduciary obligations, he was in a position of conflict of interest that made it inappropriate for him to continue as ESOP trustee. After hearing argument I advised that I found considerable merit in the Department's new position. As President of CP, Latimer had taken a strong stance against Danaher's tender offer. In an April 3, 1986 letter to CP's shareholders, he advised against tendering, adding that as trustee of the ESOP he did not plan on tendering the ESOP's shares. His continued employment as CP's President in all likelihood depended on Danaher's failure to capture control of CP. His personal interests conflicted with his duty to act in the interests of the Plan beneficiaries in deciding whether to tender its shares to Danaher. *See Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255 (2d Cir.1984); *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.1982) (J. Friendly). It seemed inappropriate for him to continue as Plan trustee during the fight for control. I offered CP an overnight recess to consider whether Latimer would withdraw as trustee before the court acted on the application to remove him. At the same time I suggested that I found far less persuasive the Department's argument for appointment of a receiver, because the appointment by CP of a neutral independent trustee seemed a less drastic but satisfactory solution. *See Donovan v. Bierwirth, supra* at 276 ("[T]he appointment of a receiver is a harsh remedy, not to be imposed without a showing of necessity.").

The next morning, Friday, April 18 at 9:30 a.m., CP advised the court by telephone that Latimer had submitted his resignation and that a substitute trustee would be proposed at the lunchtime session with the court. The court met with counsel at 1:00 p.m., at which time CP advised of the designation of Wayne A. McGrew of Utica, N.Y.

Danaher meanwhile reported that it had acquired 63% of the CP stock and had accepted the tenders. Danaher's offer, un-

less extended, would expire at 5:00 p.m. that day.

The Department and Danaher opposed the appointment of McGrew, as trustee, arguing that he was not sufficiently independent. Although McGrew has no present formal connection with CP, he had been a high ranking officer and head of a CP division for 9 years until his retirement in 1980. It was argued that his close connection with the management of CP suggests he would undertake the role with a view to helping CP management fight the Danaher takeover attempt.

I commented that although McGrew might not be subject to challenge if he had been named prior to Danaher's challenge for control of CP, his selection in the context of CP's opposition to the tender offer (CP had instituted suit against Danaher in the New Jersey courts) raised a question whether McGrew had been selected to act independently or with the expectation that he would protect his old friends and colleagues by refusing to tender the ESOP's shares.

CP defended the selection of McGrew on the grounds that his friendship with CP's employees would equip him to consult with the employees benefitted by the Plan, enabling him to take account of their wishes in discharging his responsibilities. The court thereupon asked whether the issue could not be properly resolved short of a receivership by CP appointing McGrew and two additional trustees of unquestionable independence.

The Department advised that it would accept such a resolution. After a brief recess to permit CP's counsel to consult with its client, CP advised it would not appoint two additional independent trustees. The parties requested an opportunity for briefing as to whether McGrew's appointment should be approved or a receiver appointed.

Briefs were submitted Saturday, April 19, 1986 at 9:30 a.m. Although CP's brief defended the propriety of the McGrew appointment as sole trustee, its covering letter altered its position and proposed the appointment of two additional trustees alleged to be wholly independent of CP. The proposed nominees were Mr. Austin Murphy, who is said to have been recommended by Morgan Guaranty Trust Company, and Dr. William F. Whyte. CP advised that if the court preferred an institution in place of one of the three individual trustees, it would appoint either East River Savings Bank (of which Mr. Murphy is the Chief Executive Officer) or Morgan Guaranty Trust Company. Together with its statement that Whyte and Murphy are wholly independent of CP, CP submitted their biographical sketches from *Who's Who in America*, demonstrating a very high degree of professional qualification to discharge the duties of an ESOP trustee and to evaluate the tender offer for the ESOP's shares.

A reply submitted by Danaher on Saturday evening, April 18, 1986 opposed CP's proposal arguing that CP has demonstrated a determination throughout the litigation to insure that the ESOP's shares would be used to fight the Danaher offer and that CP resisted at each stage until the point where it faced a likely adverse court decision. Danaher argued that designees of CP's Board in these circumstances should be suspect as to their independence of mind and asked the court to appoint financial institutions.

A conference was held on Monday, April 21 at 5:00 p.m. to discuss, among other things, Danaher and the Labor Department's reaction to CP's proposed nominees. The Labor Department expressed its willingness to accept CP's proposal, subject to further opportunity to ascertain the independence of CP's nominees. Danaher again indicated a preference for the court appointing financial institutions as the two additional trustees and expressed skepticism as to the independence of Mr. Whyte because of his alleged connection with one of CP's Directors, Andrew Schultz. Both Whyte and Schultz are professors at Cornell University. Moreover, Schultz was one of Latimer's professors when he was a student at Cornell. Danaher expressed

further concern over Whyte's neutrality because of an article Whyte published in 1978 criticizing conglomerate acquisitions and advocating employee ownership as a weapon to impede such acquisitions. *See* W. Whyte, "In Support of Voluntary Employee Ownership," *Social Science and Public Policy* (September/October 1978).

In an April 23, 1986 letter to the court, the Labor Department indicated that it did not object to Murphy's appointment as trustee, but that it did object to Whyte's appointment. In an April 23 letter to the court, Danaher advised that it objected to the appointment of both Whyte and Murphy. Additional connections between Whyte and the CP board were alleged as a basis for Danaher's objection to Whyte; objections to Murphy were conclusorily asserted, not explained.

In an April 29, 1986 order, I accepted CP's nominations of McGrew, Murphy and Morgan Guaranty Trust Company, finding that Danaher had "failed to substantiate any challenge to Murphy's independence." (I also advised the Trustees, through CP's counsel of the substance of the matters discussed below.) The next day CP advised the court by telephone that Morgan Guaranty had declined the nomination and the following day notified the court that Amalgamated Bank of New York had been nominated in Morgan Guaranty's place. A conference was held a day later, May 2, 1986, at which time CP advised the court that Amalgamated Bank had declined to act as trustee, leaving McGrew and Murphy as the trustees. The court was also advised that earlier that day McGrew and Murphy voted against tendering the ESOP shares to Danaher. The tender offer expired at 5:00 p.m. that day.

## DISCUSSION

Further discussion seems warranted, particularly because of the possibility of future tender offers for the ESOP shares. CP has repeatedly advanced the premise that the persons whose interests the trustees were duty bound to protect are those 2,000 employees of CP holding jobs that are scheduled to participate in the ESOP's distributions over the next 20 years. Thus, CP proposed in one conference with the court that the question whether the ESOP should tender its shares be passed through to be governed by the vote of the Plan participants. In an April 24 letter to the court, CP asserted "it is legal under ERISA ... to pass the vote through directly to the employees ... there is no more representative group than the present employees of the interests of all CP employees, present and future." On April 3, 1986 Latimer wrote to CP's shareholders that he did not plan to tender the one million shares unless "I believe that the participant employees desire I do so, and there is no indication of that." And after the nomination of Mr. McGrew, CP argued that McGrew was well suited to the trusteeship because his familiarity with the Plan participants would make it easy for him to remain aware of their views.

█ It seems appropriate to comment since the trustees may face further obligation to act as fiduciaries for the ESOP upon offers and other matters that this view misstates the issue and the nature of the trustees' obligation. I believe it would be inappropriate (and perhaps a breach of fiduciary obligation) for a trustee to put aside his personal judgment in favor of carrying out the wishes of the CP plan participants. *See generally,* A. Scott, *The Law of Trusts* § 227.1 at 1809–10 (3d ed. 1967) ("[A trustee] is not justified in relying wholly upon the advice of others since it is his duty to exercise his own judgment ... in relying upon the advice of another [the trustee] should consider whether the person giving the advice is disinterested."); *Jackson v. Conland,* 178 Conn. 52, 420 A.2d 898 (1979).

The Plan participants consist of approximately 2,000 employees in salaried non-union jobs, ranging from the Chief Executive Officer to low supervisory management and administrative levels. Apart from 20,-000 shares that were allocated among the participants last December 31, the participants have no vested right to participate in

future allocations and distributions from the plan. In any given year of the Plan's 20-year funded future, their participation depends on their being employed in a participating position at the year's end (and the vesting of such rights depends on their having had three years' employment with the company). Now, a few weeks after the million share funding of the Plan and continuing until the end of its first year, no part of the million shares has been allocated to any individual employee. The eligibility of any employee to participate in each year's allocations depends on his continuing to be employed in a participating position at the end of each Plan year.

It is a fair assumption that a number of the plan participants, particularly the higher-salaried, larger presumptive participants, regard the possibility of a successful takeover and merger as casting doubt on their continued employment in the CP organization. Furthermore, those presumptive participants who have a deep personal interest in the failure of Danaher's takeover are the bosses of the remainder of the participant group.

Thus, the notion that the Plan's vote should be governed by the wishes of its presumptive beneficiaries distorts the fiduciary's obligations. Present participants have no interest in voting for what will benefit participants in the future if such a vote results in those benefits going to persons other than themselves. A participant would presumably rather see plan benefits slashed than lose completely the benefits of employment and independence. It is precisely the recognition of this conflict that led Judge Friendly in *Donovan v. Bierwirth, supra,* to suggest that a company officer who is also the trustee of its pension plan during a hostile takeover attempt, may be under a duty to resign in favor of a neutral trustee—and that led me, at the April 18, 1986 conference, to express doubt as to the appropriateness of CP's chief executive officer continuing in his position of ESOP trustee during the takeover attempt. *See also Norlin Corp. v. Rooney, Pace Inc., supra* at 264–66; *Leigh v. Engle,* 727 F.2d 113, 122 (7th Cir.1984) ("the preferred course of action for a fiduciary of a plan holding or acquiring stock of a target, who is also an officer, director or employee of a party-in-interest seeking to acquire or retain control, is to resign and clear the way for the appointment of a genuinely neutral trustee to manage the assets involved in the control contest."). The conflict problem is not limited to management. On such questions, the vote of lower level employees may well be governed by fear of displeasing either present or future bosses. This is particularly a concern given the fact that none of Plan participants are unionized.

 It therefore appears that the trustees must discharge their duties by evaluating the best interests of beneficiaries in the abstract as beneficiaries. The duty cannot be discharged simply by consulting and carrying out the expressed wishes of those whose present position makes them the presumptive beneficiaries. To do so would be as inappropriate as voting in deference to the expressed wishes of those Danaher employees who are likely to succeed to participating positions if Danaher's takeover attempt succeeds.

## CONCLUSION

The motion of the Secretary of Labor for appointment of a receiver is regarded as mooted and withdrawn by reason of the trustees' rejection of Danaher's tender offer and the expiration of that offer on May 2, 1986.