**Karl GRINDSTAFF, et al., Plaintiffs,**

**v.**

**Charles GREEN, et al., Defendants.**

No. 2:95-CV-114.

United States District Court,
E.D. Tennessee,
Greeneville.

April 9, 1996.

D. Bruce Shine, General Counsel, Council of the United Textile Workers of America, UFCW, AFL–CIO, CLC, Donald F. Mason, Jr., Shine & Mason, Kingsport, TN, David M. Cook, Robert H. Mitchell, Manley, Burke, Fisher, Lipton & Cook, Cincinnati, OH, of counsel, for Plaintiffs.

David Randolph Smith, David Randolph Smith & Associates, Nashville, TN, Judge B. Wilson, II, Wyatt, Tarrant & Combs, Lexington, KY, Sean D. Hughto, Dow, Lohnes & Albertson, Washington, DC.

## MEMORANDUM

COLLIER, District Judge.

Before the Court are the Motion to Dismiss filed by Defendants North American Corporation ("NAC") and North American Rayon Corporation ("NARC") (Court File No. 11), the Motion to Dismiss filed by Defendants Charles Green ("Green"), Tony Butts ("Butts"), William E. Andersen ("Andersen"), and David Henry ("Henry") (Court File No. 16), and the Motion for Judgment on the Pleadings filed by First American Trust Company, N.A. ("First American") (Court File No. 22). Plaintiffs filed a Response (Court File No. 32), Defendants filed Replies (Court File Nos. 34, 35, and 36), and Plaintiffs filed a Supplemental Response (Court File No. 42). Also before the Court is the Motion to Strike Plaintiffs' Supplemental Re-

sponse filed by Defendants NAC and NARC (Court File No. 44). For the following reasons, the Court will **GRANT** the motions to dismiss filed by NAC and NARC and Green, Butts, Andersen, and Henry, will **GRANT** the motion for judgment on the pleadings filed by First American, and will **GRANT** the motion to strike filed by NAC and NARC.[1]

## I. STANDARD OF REVIEW

Defendants moved the Court to dismiss this action under *Fed.R.Civ.P.* 12(b)(6) and under *Fed.R.Civ.P.* 12(c). The standard of review applicable to a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 n. 1 (6th Cir.1988). A motion to dismiss under *Fed.R.Civ.P.* 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *see also Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995) (not-ing that courts should not weigh evidence or evaluate the credibility of witnesses). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller,* 50 F.3d at 377. However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid,* 859 F.2d at 436. "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

## II. FACTS[2]

▮ Plaintiffs articulate their claims as arising under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Plaintiffs are administrators, participants, and beneficiaries of an Employee Stock Ownership Plan ("ESOP"),[3] first organized in 1985 with stock of NARC and then sponsored in 1990 with stock of NAC. NAC is a holding company that controls all of the stock of NARC and other entities not directly pertinent to this litigation.[4] The ESOP currently holds in trust 85% of the stock of NAC. "[A]uthority to control and manage the operation and administration of the [ESOP]" lies with the ESOP Administrative Committee, comprised of three individuals appointed by the Board of Directors of NAC "to serve at its pleasure and without compensation" (Court File No.

---

1. Even though the Court granted Plaintiffs leave to file a Supplemental Response (Court File No. 41), the Court finds Plaintiffs' Supplemental Response (Court File No. 42) reargues its previous positions, does not offer changes in the law, and, in fact, cites to its earlier Response (*See id.* at p. 9). Plaintiffs did not offer "to the court's attention developments occurring after [their] final brief...." *Local Rules of E.D. Tennessee* 7.1(d). Accordingly, the Court will **GRANT** Defendants' motion to strike (Court File No. 44).

2. The Court draws these facts largely from Plaintiffs' Complaint (*See* Court File No. 1). Defendants contest whether Plaintiffs' claim is properly labeled as an ERISA claim; rather, they contend the facts reveal a labor-management dispute (*see* Court File Nos. 14, p. 1 and 19, p. 1). Simply for purposes of the motions before the Court, though, the Court will assume *only* the factual allegations as true. Nonetheless, the facts as alleged require the Court to make certain preliminary legal conclusions.

3. An ESOP is an individual account plan—

> (A) which is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of Title 26, and which is designed to invest primarily in qualifying employer securities, and
> (B) which meets such other requirements as the Secretary of the Treasury may prescribe by regulation.

29 U.S.C. § 1107(d)(6). *See also Kuper v. Iovenko,* 66 F.3d 1447, 1457 (6th Cir.1995) (stating "[a]n ESOP is an ERISA plan that invests primarily in 'qualifying employer securities'" (*citing* Section 1107(d)(6)(A))).

4. Plaintiffs point out the extent to which some of the Defendants control these related entities, North American Polyester Corporation and Franklin Club, Inc. (*see* Court File No. 1, ¶¶ 3, 11, and 12). These entities, though, are not parties to this action.

**544**

21, Ex. 1, NAC ESOP p. 36).[5] The Board of Directors of NAC appoints one of the three ESOP administrators upon the recommendation of the United Textile Workers of America, AFL–CIO, CLC ("UTWA") and its Local Union Numbers 2207 and 2614 ("local unions"), who serve as the Collective Bargaining Agents for NARC employees.

Defendant First American is the Trustee for the current NAC ESOP. Other Defendants serve in various capacities in both NAC and NARC. Green is President and Chief Executive Officer of both NAC and NARC, as well as a Member and Chairman of the Board of NAC and NARC, and Chairman and Member of the ESOP Administrative Committee; Butts is a Vice–President of NAC and NARC, as well as a Member of the Board of NAC and NARC, and a Member of the ESOP Administrative Committee; Andersen is a Director of NAC and NARC, as well as the labor relations negotiator with the unions; and Henry is a Director of NAC. The fifth member of the NAC Board of Directors, Raymond Broyles, and the last two members of the NARC Board of Directors, Dr. Niles Schoening and Dr. Glenn Yago, are not named defendants.[6] Along with . Green and Butts, Plaintiff Karl Grindstaff ("Grindstaff") is · the UTWA-recommended, third member who serves on the ESOP Administrative Committee. Grindstaff is a. NARC employee, an elected officer of Local Union 2207, and a plaintiff in this case.

The ESOP at issue came into being in 1985 as a result of a series of collective bargaining agreements. The ESOP controls 85% of NARC stock, held by an ESOP Trust, and the remaining 15% of NARC stock goes to management employees. Participating employees' interests vest according to their level of compensation and length of service, with full vesting after five years of participation. Actual benefit distribution occurs at an employee's retirement, death, disability, or other approved break in service.

· In 1990, NAC became the ESOP sponsor. Plaintiffs allege the NARC Board of Directors, led by Green and Butts, voted to create NAC as a holding company for NARC and other related entities. With this change, NAC stock became the ESOP stock. Green and Butts, then Members of the NARC ESOP Administrative Committee, became two of the three Members of the NAC Board of Directors. As noted above, the NAC Board of Directors appoints members to the ESOP Administrative Committee: Plaintiffs state Green and Butts then elected themselves as two of the three NAC ESOP Administrative Committee members. Plaintiffs further argue the NAC Board of Directors expanded to five members in 1990 and, because the NAC ESOP Administrative Committee "directs the Trustee of the ESOP" how to vote 85% of the NAC stock, Green and Butts "directed the Trustee [First American] to elect themselves along with their labor counsel" Andersen to serve as three of the five NAC Board members (Court File No. 1, ¶ 28). Plaintiffs claim the "net effect of the restructuring" places Green, Butts, and Andersen in "absolute control of a 100% employee-owned company . . . in circumvention of the intent of the original NARC ESOP" (*Id.* at ¶ 29) and "denie[s NARC employees] any voice, direction, or ear in the overall operation and direction" of NAC (*Id.* at ¶ 30).

**5.** While Plaintiffs did not submit to the Court copies of the ESOP and other referenced documents with their Complaint, the Court may consider the documents presented by Defendants because Plaintiffs routinely refer to them throughout the Complaint. *See Venture Assoc. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993) (considering documents presented by the defendant as part of a motion to dismiss); *Cue Fashions, Inc. v. LJS Distribution, Inc.,* 807 F.Supp. 334, 335 (S.D.N.Y.1992) (considering documents presented by the defendant as part of a motion for judgment on the pleadings). Moreover, Plaintiffs refer to and cite pertinent sections of these documents in their own Response to Defendants' motions. *See, e.g.,* Court File No. 32,· p. 14.

**6.** The Court does not find a specific reason given for the absence of Raymond Broyles, Dr. Niles Schoening, and Dr. Glenn Yago as defendants. The Court notes Plaintiffs' Complaint ¶ 26 states that the NARC Board of Directors consisted of a UTWA representative. At the time of the ESOP's creation, "employees of [NARC] were promised that [at] all times a representative of the UTWA would sit on the Board of Directors of the ESOP Company" (Court File No. 1, ¶ 26). Plaintiffs thoroughly address this contention in the Complaint (*Id.* at ¶¶ 26–35).

Believing their collective bargaining agreements violated, in February 1991 NARC employees/ESOP participants began to try to have the ESOP amended. They sought amendment of Section 9, "Voting Company Stock," to allow for "pass-through voting," whereby each participant would instruct the NAC ESOP Administrative Committee "as to the manner in which shares of company stock allocated to that ESOP participant's account [would] be voted to the maximum extent allowed by law" (*Id.* at ¶ 32). The employees/participants wanted either consideration given to the proposal at the NAC annual meeting or a special meeting of the shareholders called to address the issue. After a lawsuit over the issue began in 1991, the parties apparently resolved to settle "their differences by compliance with the general intent of the original ESOP Trust Agreement" (*Id.* at ¶¶ 33 and 34). Plaintiffs argue this did not occur. According to Plaintiffs, the settlement agreement required "the majority of corporation's (*sic.*) directors [to] come from 'outside the corporation'" (*Id.* at ¶ 35). While NAC added two Board members, Plaintiffs claim both new members, Henry and Andersen, are not "impartial" (*Id.*).

During collective bargaining on 29 September 1994, the UTWA offered to positively represent to its membership proposed modifications of the collective bargaining agreement in return for amendments to the ESOP Trust Agreement and NAC Charter to allow for pass-through voting rights. Plaintiffs note labor negotiator Andersen presented the offer to the NAC Board, but the NAC Board unanimously rejected the proposal. Plaintiffs argue Andersen and the NAC Board believed "lending institutions wouldn't go along with the proposal" and thought "it was not in the best interest of NAC to allow its employee owners to vote their own stock" (*Id.* at ¶ 38). Plaintiffs contend Green, Butts, Andersen, and Henry were more concerned with their own interests and should have either agreed to pass-through voting or resigned to allow for an independent evaluation of the proposal.

The collective bargaining agreements in place between the UTWA, the local unions, and NARC expired on 4 October 1994. From midnight 4 October 1994 until 1 December 1994, the unions maintained an economic strike. Plaintiffs argue many NARC employees lost their jobs and NAC unnecessarily incurred costs in an attempt to thwart or defend against the strike. Plaintiffs contend Green's salary has greatly increased while those of hourly employees have not since 1985. Plaintiffs further contend "Green and/or other Defendant directors" have arranged contracts between NAC and NARC and corporations at least partially owned by Defendants (*Id.* at ¶ 39). The parties have not entered into a successor collective bargaining agreement.

Plaintiffs state after the strike ended on 1 December 1994 NARC began unilateral implementation of employment terms pursuant to a labor agreement not ratified by the unions. Plaintiffs contend this further represents Defendants' attempt to look after "their own well being" "even if such changes cause fiscal harm to the ESOP and the value of its stock" (*Id.* at ¶ 41). As a result of these changes and, in particular, the refusal of Green, Butts, Andersen, and Henry to accept the proposed pass-through voting, Plaintiffs claim NARC employees have refused to come back to work after the strike or have quit work, NARC is losing money, and the value of NARC stock has declined.

### III. *ANALYSIS*

Reduced to its essentials, Plaintiffs' Complaint alleges that management "entrenchment" (i.e., management holds "absolute control of a 100% employee-owned company...."), in an ESOP owned company necessarily implicates violation of ERISA mandated fiduciary duties when the "entrenched" management appoints members of the administrative committee that, in turn, controls the stock voting rights of the ESOP.

Management "entrenchment," as used in this sense, is the rule, not the exception in ESOP corporations. One commentator reports that ESOP corporations' boards of directors select the ESOP trustee ninety percent (90%) of the time. O'Toole, *The Disproportionate Effects of an ESOP's*

*Proportional Voting,* 85 NW.U.L.Rev. 824, 836, n. 76 (Spring 1991). This same commentator states forty-seven percent (47%) of ESOPs had trustees who were also officers of the sponsoring corporation. *Id.*

Congress specifically recognized and approved corporate managers also serving as ESOP fiduciaries. *See* 29 U.S.C. § 1108(c)(3).[7] The Court must assume Congress, in authorizing this dual service and its prevalence in the corporate sector, realized as a practical matter that ESOP fiduciaries would have ties and loyalties to management. Congress would have known that in most cases management would appoint the ESOP fiduciary and then have some control over the fiduciary's tenure. It can also be as-sumed Congress was aware members of management would also serve as ESOP fiduciaries in many cases. Accordingly, we can ascribe to Congress the knowledge that ESOP fiduciaries often would have ties to, and loyalty to, management, and some self-interest would be inherent. Section 1108(c)(3) only makes sense in this context.

With this in mind, we now address the parties' contentions.

Plaintiffs rest the bulk of their claims upon alleged violations of the fiduciary and co-fiduciary duties prescribed by ERISA. Generally, they bring claims under: 29 U.S.C. § 1104(a)(1)(A), (B), and (D);[8] 29 U.S.C. § 1105(a);[9] 29 U.S.C. § 1106(a) and (b);[10]

7. 29 U.S.C. § 1108(c) reads:

**(c) Fiduciary benefits and compensation not prohibited by section 1106**
Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from—

(1) receiving any benefit to which he may be entitled as a participant or beneficiary in the plan, so long as the benefit is computed and paid on a basis which is consistent with the terms of the plan as applied to all other participants and beneficiaries;

(2) receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan; except that no person so serving who already receives full-time pay from an employer or an association of employers, whose employees are participants in the plan, or from an employee organization whose members are participants in such plan shall receive compensation from such plan, except for reimbursement of expenses properly and actually incurred; or

(3) serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest.

8. 29 U.S.C. § 1104(a) reads, in pertinent part:

**(a) Prudent man standard of care**
(1) ... [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; [and]

\* \* \* \* \* \*

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of the subchapter or subchapter III of this chapter.

9. 29 U.S.C. § 1105(a) reads, in pertinent part:

**(a) Circumstances giving rise to liability**
In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

10. 29 U.S.C. § 1106(a) and (b) read, in pertinent part:

**(a) [Prohibited t]ransactions between plan and party in interest**

\* \* \* \* \* \*

**(b) [Prohibited t]ransactions between plan and fiduciary**
A fiduciary with respect to a plan shall not—
(1) deal with the assets of the plan in his own interest or for his own account, [or]
(2) in his individual or in any other capacity act in any transaction involving the plan on

29 U.S.C. § 1109, which outlines the liability for breach of fiduciary duty, including removal of the fiduciary; and 29 U.S.C. § 1132(a)(3)(B), which allows a plaintiff "to obtain other appropriate equitable relief." These ERISA claims principally revolve around two alleged fiduciary violations: the voting of an ESOP Plan's shares and rejection of pass-through voting. Plaintiffs also argue Green, Butts, and Andersen violated *Tenn. Code Ann.* § 48–26–102 for failing to allow Plaintiffs access to pertinent corporate records and documents relating to NAC, NARC, and other related entities.

### A. *ERISA*

This action presents a narrow, specific proposition: "[t]he right to vote the ESOP Plan's shares constitutes an 'asset' of the ESOP . . . ., [and] the exercise of that right . . . to maintain [one's positions] as [a] member[] of the ESOP Administrative Committee and as [a] Director[] of North American Corporation" violates fiduciary duties (Court File No. 1, ¶ 51). Plaintiffs argue a "fiduciary with respect to a plan shall not . . . deal with *the assets* of the plan in his own interest or for his own account," 29 U.S.C. § 1106(b)(1) (emphasis added), because to do so breaches the fiduciary's duty of "disch arg[ing] his duties with respect to a plan *solely in the interest of the participants and beneficiaries.*" 29 U.S.C. § 1104(a)(1) (emphasis added). They allege Green and Butts violated these duties when they used their authority as members of the NAC ESOP Administrative Committee to instruct First American to vote the 85% of NAC stock held by First American in favor of Green, Butts, and Andersen as members of the NAC Board of Directors. Moreover, they further allege "Defendants, including but not limited to Defendants Green and Butts, have pursued an overall plan of operating and dominating the ESOP Committee for the benefit of themselves" (*Id.* at ¶ 55).

To defend their Complaint, Plaintiffs cite apparently the only two cases directly addressing this issue, *O'Neill v. Davis,* 721 F.Supp. 1013, 1014 (N.D.Ill.1989) (noting

each member of Board of Directors was a trustee of the Plan) and *Newton v. Van Otterloo,* 756 F.Supp. 1121, 1132 (N.D.Ind. 1991) (noting trustee was a directed trustee). The *O'Neill* court analyzed "whether the voting of plan-owned shares constitutes the exercise of fiduciary powers" and thus rooted its analysis in what makes one a fiduciary. 721 F.Supp. at 1015. In part, ERISA utilizes a functional test and defines a person as a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting *management or disposition* of its assets." *Id., citing* 29 U.S.C. § 1002(21)(A)(i) (emphasis added).

From this language, the court reasoned the "disposition of Plan assets is not necessary in order for the fiduciary duty to rise. The exercise of authority or control over management of the assets will suffice." *Id.* (noting the word " 'management' cannot logically be limited to the 'investment' of Plan assets"). The court then summarily concluded "the defendant trustees exercised authority or control over the management of plan assets by exercising the power to vote plan shares . . . to cause a change in the Company's management." *Id.* The court proceeded to trace a fiduciary's responsibilities through 29 U.S.C. §§ 1104(a) and 1106(b)(1) and stated "the voting of Plan-owned shares by the Plan's trustees was a fiduciary act under ERISA[] and one which the trustees were bound to exercise in the sole interests of the Plan participants." *Id.* Underlying the *O'Neill* court's analysis, though without a clear explanation of how or why, lay the precedent opinion that voting an ESOP Plan's shares *is a plan asset.*

The *Van Otterloo* court concurred with *O'Neill. Van Otterloo,* 756 F.Supp. at 1128. In *Van Otterloo,* the court stated the *O'Neill* "plaintiffs, as here, contended that the trustees of an employee stock ownership trust had voted the trust's shares of company stock to reconstitute the company's board of directors and to consolidate their control of the company." *Id.* (noting the *O'Neill* court held the

behalf of a party (or represent a party) whose interests are adverse to the interests

of the plan or the interests of its participants or beneficiaries, . . .

complaint stated a claim for which relief could be granted under ERISA); *see O'Neill,* 721 F.Supp. at 1013–14. The *Van Otterloo* court adopted the opinion that "the right to vote the . . . shares" was an ESOP asset. *Van Otterloo,* 756 F.Supp. at 1127, 1128. After making this initial finding, the court reasoned an analysis of fiduciary duties should follow:

> The Committee made decisions on how plan assets—the right to vote the SBL shares—were to be managed: who among the participants would be allowed to vote, and how the remaining shares would be voted.

*Id.* at 1128. The *Van Otterloo* court then specifically found certain defendants to have "divided loyalties on the matter of the continuation of the management slate." *Id.* at 1128 (noting the effect of divided loyalties on actual decisions made).

The Court found another case that could lend support for Plaintiffs' position. When determining whether certain defendants qualified as fiduciaries, the court in *Pudela v. Swanson,* No. 91 C 3559, 1995 WL 77137 (N.D.Ill. Feb. 21, 1995) analyzed 29 U.S.C. § 1002(21)(A) much the same way as did the court in *O'Neill.* The *Pudela* court reasoned "fiduciary status may be based on either the exercise of discretionary authority or control respecting plan management or administration, or (2) the exercise of any authority or control—without the qualification that this exercise be discretionary—over management or disposition of plan assets." *Id.* at p. *6 (finding the defendants did not have "authority to vote or otherwise control the ESOP's shares"). Thus, while *Pudela* did not label voting an ESOP Plan's shares as a plan asset, it provided an analytical framework that distinguished between management *or* disposition of plan assets. The Court emphasizes, though, that Plaintiffs in this action *are not making* the breach of fiduciary duty argument as made in *Pudela,* which did not address whether voting an ESOP Plan's shares is a plan asset.

Defendants distinguish *O'Neill* on the grounds that it represents a situation where "fiduciaries attempted to use an ESOP in a control dispute" among the board of directors, but does not recognize "entrenchment" as a fiduciary breach (Court File No. 35, pp. 3, 4). They argue the instant case has no control dispute among the board of directors; rather, the elections for the directors of NAC were nothing more than normal uncontested, "course of affairs" elections (*Id.* at p. 3). Defendants emphasize the extent to which the *O'Neill* board of directors used their control of the company's shares to exclude the plaintiff from the board, fire him for cause, and thereby deny him severance benefits (*See* Court File No. 36, pp. 3–4); *see also O'Neill,* 721 F.Supp. at 1014. Defendants also distinguish *Van Otterloo* by arguing the defendants there faced a choice under the terms of the ESOP plan, which thus required an objective, independent review of the alternatives (*See* Court File No. 36, p. 6 n. 4). Additionally, they argue *Van Otterloo* recognizes "[d]ual capacity and self-selection alone do not raise a claim for breach of fiduciary duty" (*Id.* at p. 5); *see also Van Otterloo,* 756 F.Supp. at 1127, 1128.

■ Initially, the Court observes Plaintiffs' claim—whether voting an ESOP Plan's shares constitutes a plan asset—raises an issue of first impression in this circuit and one only barely addressed elsewhere.[11] The Court will begin its analysis with an overview of ERISA and ESOP fiduciary duties. The United States Court of Appeals for the Sixth Circuit has expressed that "ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets." *Kuper,* 66 F.3d at 1458, *citing* 29 U.S.C. § 1104(a)(1). ERISA fiduciary duties have three components. First, the "duty of loyalty" requires "all decisions regarding an ERISA plan '[to] be made with an eye single to the interests of the participants and beneficiaries.'" *Id., quoting Berlin v. Michigan Bell Tele. Co.,* 858 F.2d 1154, 1162 (6th Cir. 1988) (internal citation omitted). Second, the

---

**11.** Apparently the United States Department of Labor takes the position voting of ESOP plan shares is a plan asset. O'Toole, *The Dispropor-* *tionate Effects of an ESOP's Proportional Voting,* 85 NW.U.L.Rev. 824, 849 n. 171 (Spring 1991).

"prudent man" obligation imposes "an un-wavering duty" to act as a prudent person would in similar circumstances and "with single-minded devotion" to the participants and beneficiaries. *Id.* (quoting *Berlin,* 858 F.2d at 1162). Third, the fiduciary must "act for the exclusive purpose" of providing benefits to plan beneficiaries. *Id.* (citations omitted).

In spite of these rigid standards, courts have carved out exceptions governing ESOPs. Because ESOPs primarily invest in qualifying employer securities generally issued by the ESOP's sponsoring company, ESOPs, unlike traditional pension or welfare plans, "are not intended to guarantee retirement benefits, and indeed, by [their] very nature ... 'place[ ] employee retirement assets at much greater risk than does the typical diversified ERISA plan.'" *Moench v. Robertson,* 62 F.3d 553, 568 (3rd Cir.1995), *citing Martin v. Feilen,* 965 F.2d 660, 664 (8th Cir.1992), *cert. denied,* 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993); *see also Kuper,* 66 F.3d at 1457 (noting an ESOP functions both as "an employee retirement benefit plan and a 'technique of corporate finance' that would encourage employee ownership") (citation omitted). One key exception is the fiduciary's relief from ERISA's "strict prohibitions against self-dealing, that is 'deal[ing] with the assets of the plan in his own interest or for his own account.'" *Kuper,* 66 F.3d at 1458, *citing Martin,* 965 F.2d at 665 (quoting 29 U.S.C. § 1106(b)(1)); *see also Moench,* 62 F.3d at 568. Notwithstanding the above, an ESOP fiduciary is bound by 29 U.S.C. § 1104, forcing the ESOP fiduciary to "wear two hats ... [and] 'administer ESOP investments consistent with the provisions of both a specific employee benefits plan and ERISA.'" *Kuper,* 66 F.3d at 1458, *quoting Moench,* 62 F.3d at 569.

Courts delimit an ESOP fiduciary's duties by emphasizing the language "to the extent" defining a fiduciary in 29 U.S.C. § 1002(21)(A) ("[A] person is a fiduciary with respect to a plan *to the extent....*") (emphasis added); *see also Martin,* 965 F.2d at 669; *Tregoning v. American Community Mut. Ins. Co.,* 815 F.Supp. 1054, 1058 (W.D.Mich.1992) (listing cases), *aff'd,* 12 F.3d 79 (6th Cir.1993). "[F]iduciary status under § 1002(21)(A) is not an 'all or nothing concept.... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question.'" *Maniace v. Commerce Bank of Kansas City,* 40 F.3d 264, 267 (8th Cir.1994), *quoting Kerns v. Benefit Trust Life Ins. Co.,* 992 F.2d 214, 217 (8th Cir.1993). "[A] person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1459-60 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987).

The clear weight of the case authority indicates ERISA focuses on a fiduciary's duties regarding the *investment* of plan assets. *See Kuper,* 66 F.3d at 1457-60 (analyzing the policies of diversification or liquidation of plan assets and the standard of review); *Moench,* 62 F.3d at 568-72 (analyzing the policies of diversification of plan assets and the standard of review); *Maniace,* 40 F.3d at 267-69 (analyzing the role of a directed trustee and not finding a requirement of "weigh[ing] the merits of an investment"); *Ershick v. United Missouri Bank,* 948 F.2d 660, 666-67 (10th Cir.1991) (analyzing the role of a directed trustee and not finding a requirement of weighing the merits of an investment); *Leigh v. Engle,* 727 F.2d 113, 124-36 (7th Cir.1984) (analyzing the repercussions of a fiduciary's investments). The *investment* of an asset implies *the asset* must have some sort of inherent value, be capable of the assignment of value, or otherwise be subject to market forces.

Case authority also demonstrates "purely business decisions by an ERISA employer are not governed by section 1104's fiduciary standards." *Kuper,* 66 F.3d at 1456 (noting "the decision to arrange a trust-to-trust transfer" was not a fiduciary one), *citing Berlin,* 858 F.2d at 1163. ERISA recognizes "that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets." *Hickman v. Tosco Corp.,* 840 F.2d 564, 566 (8th Cir.1988) (noting "day-to-day corporate busi-

ness transactions, which may have a collateral effect on prospective, contingent employee benefits, [do not have to] be performed solely in the interest of plan participants").

The *Martin* court concluded *Hickman* applied to ESOPs as well. *Martin*, 965 F.2d at 666. "Virtually all of an employer's significant business decisions affect the *value* of its stock, and therefore the benefits that ESOP plan participants will ultimately receive." *Id.* (noting section 1104 applies "only to transactions that involve investing the ESOP's assets or administering the plan"). The Sixth Circuit has stated "a company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan." *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir.1990); *see also Bryant v. International Fruit Prod. Co.*, 886 F.2d 132, 134 (6th Cir.1989) (holding that trustees did not breach fiduciary duty by failing to reverse company's decision to amend plan); *Musto v. American General Corp.*, 861 F.2d 897, 911 (6th Cir.1988) (noting that deciding what a plan's terms should be does not implicate a fiduciary duty).

From the above review of ERISA caselaw, it is further clear courts cannot fully determine an ESOP fiduciary's duties without understanding the fiduciary's responsibilities as set forth in the ESOP plan itself. Indeed, section 1104(a)(1) observes "a fiduciary shall discharge his duties *with respect to a plan* solely in the interest of the participants and beneficiaries...." 29 U.S.C. § 1104(a)(1) (emphasis added); *see also Kuper*, 66 F.3d at 1458, *quoting Moench*, 62 F.3d at 569 (An ESOP fiduciary must "wear two hats ... [and] 'administer ESOP investments *consistent with the provisions of both a specific employee benefits plan and ERISA.*'") (emphasis added). Plaintiffs point to Section 17(b) of the NAC ESOP plan, relating to the ESOP Administrative Committee, as central to their claim that voting an ESOP's shares is a plan asset (*see* Court File No. 32, pp. 13–14). Section 17(b) reads, in pertinent part:

> *Committee Action*—Committee action will be by vote of a majority of the members at a meeting or in writing without a meeting. A Committee member who is a Participant

> *shall not vote on any question relating specifically to himself* unless his (*sic.*) is the sole member of the Committee.

(Court File No. 21, Ex. 1, NAC ESOP p. 36) (emphasis added). Defendants argue Section 17(b) must be read in context with Section 17(c), which they believe anchors the voting proscription of Section 17(b) to matters pertaining to benefits under the Plan (*see* Court File No. 36, p. 7). Relevant provisions of Section 17(c), entitled "Powers and Duties of the Committee," which delegates certain responsibilities to the ESOP Administrative Committee, read as follows:

> (6) [The Committee is responsible for] construing and interpreting the Plan and the Trust Agreement and adopting rules for administration of the Plan that are consistent with the terms of the Plan documents and of ERISA and the [Internal Revenue] Code.

> \* \* \* \* \* \*

> The Committee shall be responsible for *directing the trustee* as to the investment of the Trust Assets.

(Court File No. 21, Ex. 1, NAC ESOP pp. 37, 38) (emphasis added). Also regarding the trustee, Section 9 provides, in pertinent part: "All Company Stock in the Trust shall be voted by the Trustee *only in such manner* as shall be directed by the Committee" (*Id.* at p. 23) (emphasis added); *see also* Court File No. 22, pp. 4–5.

### 1. Count I

The Court finds Count I of Plaintiffs' Complaint does not state a claim for which relief can be granted. Without adopting or rejecting the decisions in *O'Neill* and *Van Otterloo*, which stand for the proposition that the right to vote an ESOP Plan's shares is a plan asset, the Court does not find them dispositive. Although both *O'Neill* and *Van Otterloo* concerned entrenched management, they also concerned something in addition, *i.e.*, entrenchment plus. *O'Neill* involved an effort to oust a member of management and a plan participant. *Van Otterloo* involved an effort to limit voting. Under the circumstances of those cases, the courts found a sufficient allegation of breach of fiduciary

duties to allow the cases to go forward. Without rigorous analysis, each court presupposed the voting of an ESOP Plan's shares to be a plan asset, without establishing exactly how or why that is so, and based the subsequent analysis upon that presupposition. This necessarily triggered the applicability of fiduciary duties.

The Court is not convinced this narrow proposition finds support in the language of 29 U.S.C. § 1002(21)(A)(i), particularly relied on in *O'Neill*, 721 F.Supp. at 1015, when that section expresses "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting *management or disposition* of its assets." 29 U.S.C. § 1002(21)(A)(i) (emphasis added). *O'Neill* specifically based its reasoning upon

> the use of the disjunctive 'or' to connect the terms 'management' and 'disposition'[, which] makes plain ... [the] disposition of Plan *assets* is not necessary in order for the fiduciary duty to arise. The exercise of authority or control over management of the *assets* will suffice.

721 F.Supp. at 1015 (emphasis added). Such reasoning evinces the opinion that voting an ESOP Plan's shares is a plan asset.

From its review of ERISA case authority, the Court finds the focus of that case authority to be on the investment of plan assets, such as, whether to diversify a plan's shares or whether to sell a plan's shares. *See Kuper*, 66 F.3d at 1457–60; *Moench*, 62 F.3d at 568–72; *Maniace*, 40 F.3d at 267–69; *Ershick*, 948 F.2d at 666–67; *Leigh*, 727 F.2d at 124–36. Plaintiffs have not sufficiently demonstrated to the Court how or why the voting of an ESOP Plan's shares, in and of itself, should be considered an asset of the plan and have not pointed toward case authority offering guidance on how to define a plan asset.

This is the necessary first step, in the argument *as made by Plaintiffs*, to link the attachment of fiduciary duties to the alleged facts presented to the Court.

Considering that Congress specifically authorized of management to serve as fiduciaries,[12] the Court is unwilling, in the absence of specific direction from the appellate courts, to find a cause of action premised solely on fiduciaries either voting for themselves or directing a trustee to vote for them. The Court, in view of its interpretation of *O'Neill* and *Van Otterloo*, requires some allegation in the complaint implicating an abuse or breach of fiduciary duties other than establishing or maintaining a corporate structure clearly envisioned and authorized by Congress.

Since Count I of the complaint does not allege anything more than "corporate entrenchment," and since Plaintiffs have not shown voting on ESOP Plan's shares is a plan asset, the Court finds Count I does not state a claim for which relief can be given.

### 2. Count II

The Court finds Count II of Plaintiffs' Complaint does not state a claim for which relief can be granted. As a trustee, First American

> shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that—
>
> > (1) the plan expressly provides that the trustee or trustees are subject to a named fiduciary who is not a trustee, in which case the trustee shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and are not contrary to this chapter. . . .

29 U.S.C. § 1103(a)(1). Section 17(c) of the ESOP Plan states "[t]he Committee shall be responsible for *directing the trustee* as to the

---

**12.** The Court acknowledges that 29 U.S.C. § 1108(c)(3) does not specifically address whether fiduciaries controlling ESOP stock would vote for the corporate director. However, this is such a clear consequence of the exception, it must be imputed to Congress' knowledge. Even without this exemption, however, so long as management appoints the fiduciary, management necessarily will have ties and some degree of control over the fiduciaries. It is unlikely the board would appoint total strangers. Under these circumstances, a fiduciary always operates under some self-interest. O'Toole, *The Disproportionate Effects of an ESOP's Proportional Voting*, 85 NW. U.L.Rev. 824, 859 n. 230.

investment of the Trust Assets" (Court File No. 21, Ex. 1, NAC ESOP p. 38) (emphasis added). Moreover, Section 9 of the ESOP Plan provides, in pertinent part: "All Company Stock in the Trust shall be voted by the Trustee *only in such manner* as shall be directed by the Committee" (*Id.* at p. 23) (emphasis added); *see also* Court File No. 22, pp. 4–5.

As noted above, an ESOP fiduciary's duties are limited by the language "to the extent" found in 29 U.S.C. § 1002(21)(A) ("[A] person is a fiduciary with respect to a plan *to the extent....*") (emphasis added); *see also Martin*, 965 F.2d at 669; *Tregoning*, 815 F.Supp. at 1058 (listing cases). "[F]iduciary status under § 1002(21)(A) is not an 'all or nothing concept.... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question.'" *Maniace*, 40 F.3d at 267, *quoting Kerns*, 992 F.2d at 217. "[A] person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Sommers Drug Stores*, 793 F.2d at 1459–60.

First American is a directed trustee and is not a fiduciary to the extent it does not control the "management or disposition" of the ESOP stock it holds in trust. *See Maniace*, 40 F.3d at 267, *citing* 29 U.S.C. § 1002(21)(A). First American "had no discretion [pertaining to voting the NAC ESOP stock] and could only act at the direction of the [NAC ESOP Administrative] Committee." *Id.* However, First American must also follow the NAC ESOP Administrative Committee's directions "which are made in accordance with the terms of the plan and are not contrary to this chapter." *Id., quoting* 29 U.S.C. § 1103(a)(1); *see also Ershick*, 948 F.2d at 667–68.

Plaintiffs want to ascribe to First American a general duty of investigation into the merits of any directives given it by the NAC ESOP Administrative Committee (*See* Court File No. 1, ¶ 53). Case authority purportedly

lending support for this proposition specifically relates to the fiduciary's investigative responsibility regarding investments. *See Kuper*, 66 F.3d at 1459, *citing Fink v. National Savings and Trust Co.*, 772 F.2d 951, 955 (D.C.Cir.1985); *Maniace*, 40 F.3d at 268; *Martin*, 965 F.2d at 671; *Ershick*, 948 F.2d at 667–68. The Court does not think the case authority supports an expansion and declines to expand a directed trustee's fiduciary responsibility to include the facts of this case,[13] especially where the directives given to First American were unanimously approved, even by Plaintiff Grindstaff, the UTWA representative on the ESOP Administrative Committee (*See* Court File No. 21, Ex. 2). In addition, the NAC ESOP Plan's clear language places First American under the direction of the NAC ESOP Administrative Committee. Absent a showing of violation of ERISA or the ESOP Plan's terms, "[i]mposing any residual duties on [First American] would ... abrogate the distinction between trustees and directed trustees clearly intended by ERISA." *Maniace*, 40 F.3d at 268.

### 3. Count III

Plaintiffs in Count III contend "Defendants, including but not limited to Defendants Green and Butts, have pursued an overall pattern and plan of operating and dominating the ESOP Committee for the benefit of themselves" (Court File No. 1, ¶ 55). The Court finds Count III of Plaintiffs' Complaint does not state a claim for which relief can be granted regarding the voting of plan shares. *See discussion supra,* Section III.A.1. Count III does not state a claim for which relief can be granted regarding Defendants' refusal to adopt pass-through voting as noted in Count IV. *See discussion infra,* Section III.A.4.

### 4. Count IV

The Court finds Count IV of Plaintiffs' Complaint does not state a claim for

---

13. Unlike the situation where investments are concerned, or other matters with an objectively determinable value or benefit, here the alleged breach is the failure of First American to prevent the election of directors Green and Butts. Whether Green and Butts possess qualifications sufficient for their election is a subjective "business" decision largely incapable of objective determination absent some obvious failure on their part. Courts are not suited to determine who should be board members.

which relief can be granted. Plaintiffs argue their proposal of pass-through voting is unique because of the inherent conflict of interest borne by Defendants: allegedly, Defendants would not agree to pass-through voting because that would result in their ultimate removal from office by the ESOP participants voting their own shares. Plaintiffs contend Defendants should have either allowed an independent investigation of the proposal or resigned their positions.[14] Failure to agree to pass-through voting or to allow for objective review of the proposal Plaintiffs allege violates section 1104.

As noted above, "purely business decisions by an ERISA employer are not governed by section 1104's fiduciary standards." *Kuper*, 66 F.3d at 1456 (citation omitted). ERISA recognizes "that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets." *Hickman*, 840 F.2d at 566 (noting "day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, [do not have to] be performed solely in the interest of plan participants"). Moreover, there is no *per se* fiduciary violation simply because Defendants were administrators and fiduciaries. *See Kuper*, 66 F.3d at 1458; *Martin*, 965 F.2d at 670; *Hickman*, 840 F.2d at 566.

The *Martin* court concluded *Hickman* applied to ESOPs as well. *Martin*, 965 F.2d at 666. "Virtually all of an employer's significant business decisions affect the *value* of its stock, and therefore the benefits that ESOP plan participants will ultimately receive." *Id.* (noting section 1104 applies "only to transactions that involve investing the ESOP's assets or administering the plan"). The Sixth Circuit has held "a company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan." *Adams*,

905 F.2d at 947; *see also Bryant*, 886 F.2d at 134 (holding that trustees did not breach fiduciary duty by failing to reverse company's decision to amend plan); *Musto*, 861 F.2d at 911 (noting that deciding what a plan's terms should be does not implicate a fiduciary duty).

Whether to adopt pass-through voting as proposed by the unions is best characterized as a decision regarding what the terms of the ESOP Plan are to be and not one pertaining to the administration of the ESOP. *See Haberern v. Kaupp Vascular Surgeons Pension Plan*, 24 F.3d 1491, 1498 (3rd Cir.1994) (noting "an employer is free to develop an employee benefit plan as it wishes because when it does so it makes a corporate management decision, unrestricted by ERISA's fiduciary duties"). The issue of pass-through voting arose during negotiations over a collective bargaining agreement (*see* Court File No. 1, ¶ 37). The unions proposed pass-through voting as an amendment to the ESOP plan, for which the unions would in return favorably represent the remainder of the terms of the collective bargaining agreement to their members. Pass-through voting as proposed by Plaintiffs had not been before and was not adopted afterwards as part of the NAC ESOP Plan. *See id.* at ¶¶ 37–39.

 Absent a clear violation of ERISA, Defendants' fiduciary duties cannot extend beyond the terms of the Plan. *See United Ind. Flight Officers v. United Air Lines*, 756 F.2d 1262, 1267 (7th Cir.1985). Defendants are not "fiduciar[ies] while, or merely because, [they are] negotiating the terms and conditions of future pension benefits." *Id.* at 1268 (finding the "duties imposed on a fiduciary are inconsistent with the demands of negotiation and collective bargaining"). As case authority makes clear, there is a distinction between a fiduciary's duties when deciding what a plan's terms should be and when actually administering the plan. "The tasks of administration do

---

14. The Court notes an independent investigation of pass-through voting proposal may not be feasible. Again, unlike investments where an objective value can be determined, whether pass-through voting is good or not is a value judgment. The United States Department of Labor apparently views pass-through voting as illegal

under ERISA as violations of a fiduciary's duty of independent judgment. Commentators disagree whether pass-through or proportional voting is a wise or unwise proposition. *See generally* O'Toole, *The Disproportionate Effects of an ESOP's Proportional Voting*, 85 NW.U.L.Rev. 824 (Spring 1991).

not extend to negotiating terms of the governing collective bargaining agreement." *Id.* (noting fact of dual nature of the defendant as administrator and as fiduciary did not change the conclusion) (citations omitted); *see also Lea v. Republic Airlines, Inc.,* 903 F.2d 624, 630–31 (9th Cir.1990). Such is the case here. Pass-through voting was *a proposed change of terms* to the ESOP Plan, but *not a current term* of the ESOP Plan giving rise to the attachment of fiduciary duties. Accordingly, Defendants' rejection of the proposal during negotiations over a collective bargaining agreement does not implicate their fiduciary duties.

### 5. Count V

■ Plaintiffs in Count V contend Defendant Henry "possessed knowledge of the actions of his co-fiduciaries Green, Butts, and Andersen and their respective breach (*sic.*) of their duties" and thus violated Section 1105 (Court File No. 1, ¶ 60). The Court finds Count V of Plaintiffs' Complaint does not state a claim for which relief can be granted regarding the voting of the plan shares. *See discussion supra,* Section III. A.1. Count V does not state a claim for which relief can be granted regarding Defendants' refusal to adopt pass-through voting. *See discussion supra,* Section III.A.4.

### 6. Count VI

■ Plaintiffs in Count VI contend Defendants Green, Butts, Henry, and Andersen breached their fiduciary duties by initially appointing Green and Butts to the ESOP Administrative Committee; "Defendants and North American Corporation Directors Green, Butts, Henry, and Andersen" failed to exercise proper oversight of Green and Butts on the ESOP Administrative Committee; and Defendants Green, Butts, Henry, and Andersen failed to exercise proper oversight regarding the proposal of pass-through voting (*See* Court File No. 1, ¶¶ 62, 63, and 64).

The Court finds Count VI of Plaintiffs' Complaint does not state a claim for which relief can be granted regarding the voting of the plan shares. *See discussion supra,* Section III.A.1. Count VI does not state a claim for which relief can be granted regarding

Defendants' refusal to adopt pass-through voting. *See discussion supra,* Section III. A.4. Count VI does not state a claim for which relief can be granted regarding the dual nature of Defendants Green and Butts sitting on the ESOP Administrative Committee and serving as NAC Directors. *See Kuper,* 66 F.3d at 1458; *Martin,* 965 F.2d at 670; *Hickman,* 840 F.2d at 566.

### 7. Count VII

■ Plaintiffs in Count VII contend Defendants' rejection of pass-through voting "resulted in an economic strike" and ultimately caused a "decline in the fair market value of the [ESOP's] shares" (Court File No. 1, ¶¶ 66 and 68). The Court finds Count VII does not state a claim for which relief can be granted regarding Defendants' refusal to adopt pass-through voting. *See discussion supra,* Section III.A.4. However, Plaintiffs also broadly attribute the economic strike to a general claim of Defendants' alleged breach of fiduciary duties. Accordingly, the Court finds Count VII of Plaintiffs' Complaint also does not state a claim for which relief can be granted regarding the voting of the plan shares. *See discussion supra,* Section III.A.1.

### B. *Tenn. Code Ann. § 48–26–102*

### 1. Count VIII

Plaintiffs in Count VIII contend Defendants Green, Butts, and Andersen violated *Tenn. Code Ann.* § 48–26–102 by "failing to provide Plaintiffs access to the books and records of [NAC] and its wholly owned subsidiaries subsequent to Plaintiffs' request" (Court File No. 1, ¶ 71). Defendants first argue ERISA preempts this claim because Plaintiffs did not bring their claims as shareholders but as participants and beneficiaries of the NAC ESOP Plan. In the alternative, Defendants contend Plaintiffs do not have rights under the statute because they do not qualify as "shareholders" as defined by statute.

*Tenn. Code Ann.* § 48–26–102 reads, in pertinent part:

(a) A shareholder of a corporation is entitled to inspect and copy ... any of the

records of the corporation described in § 48–26–101(e), if the shareholder gives the corporation written notice of the shareholder's demand at least five (5) business days before the date on which the shareholder wishes to inspect and copy.

The section provides for review of additional types of records under subsection (b) pursuant to certain qualifications outlined in subsection (c). *See Tenn.Code Ann.* § 48–26–102(b) and (c). Plaintiffs do not specify under which subsection they bring their claim. Integral to both subsections, though, is the requirement that the party seeking access to the corporation's records be a "shareholder of the corporation." *See* § 48–26–102(a) and (b). A "shareholder" is defined as "the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." *Tenn.Code Ann.* § 48–11–201(25).

Whether Defendants violated *Tenn.Code Ann.* § 48–26–102 is purely a state law claim. Having dismissed all federal claims from this case, the Court declines to address this issue. The Court will not exercise pendent jurisdiction.

## IV. *CONCLUSION*

The Court will GRANT the motions to dismiss filed by NAC and NARC (Court File No. 11) and Green, Butts, Andersen, and Henry (Court File No. 16), will GRANT the motion for judgment on the pleadings filed by First American (Court File No. 22), and will GRANT the motion to strike filed by NAC and NARC (Court File No. 44).

An Order will enter.

### *ORDER*

In accordance with the accompanying Memorandum, the Court **GRANTS** the Motion to Dismiss filed by Defendants North American Corporation ("NAC") and North American Rayon Corporation ("NARC") (Court File No. 11), **GRANTS** the Motion to Dismiss filed by Defendants Charles Green ("Green"), Tony Butts ("Butts"), William E. Andersen ("Andersen"), and David Henry ("Henry") (Court File No. 16), **GRANTS** the

Motion for Judgment on the Pleadings filed by First American Trust Company, N.A. ("First American") (Court File No. 22), and **GRANTS** the Motion to Strike Plaintiffs' Supplemental Response filed by Defendants NAC and NARC (Court File No. 44).

**SO ORDERED.**