Debra KEACH and Patricia
Sage, Plaintiffs,

v.

U.S. TRUST COMPANY, N.A.,
et al., Defendants.

No. 01–1168.

United States District Court,
C.D. Illinois,
Peoria Division.

March 6, 2003.

Dean B. Rhoads, Robert Rhode, Edward Sutkowski, Steven Oates, Sean Anderson, Sutkowski & Rhoads, Peoria, IL, for Plaintiffs Debra Keach and Patricia Sage.

Timothy Bertschy, Heyl, Royster, Voelker & Allen, Peoria, IL, Robert Eccles, Shannon M. Barrett, O'Melveny & Myers LLP, Washington, DC, for Defendant U.S. Trust Company, NA, fka U.S. Trust Company of California.

Charles Roth, James Springer, Joseph Z. Sudow, Kavanagh Scully Sudow White & Frederick, Peoria, IL, Michael T. Graham, Nancy Ross, McDermott Will & Emery, Trent P. Cornell, Duane Morris LLC, Chicago, IL, for Defendant Ellen D. Foster, Executrix of the Estate of Thomas S. Foster and as Co–Trustee of the Thomas S. Foster Trust executed on 4/14/94.

Michael T. Graham, Nancy Ross, McDermott Will & Emery, Chicago, IL, for Defendant The Northern Trust Company, an Illinois Corporation as Co–Trustee of the Thomas S. Foster Trust executed on 4/14/94.

Richard J. Pautler, Jennifer Baetje, Thompson & Coburn, St. Louis, MO, for Defendants Robert A. Ostertag, Jr., Terry P. Cole, Alan R. Dix, Jon Elletson, A. Robert Pellegrino.

James Bailey, Paul Ondrasik, Jr., Steptoe & Johnson, Washington, DC, Roy Davis, David Lubben, Davis & Campbell LLC, Peoria, IL, for Defendants Valuemetrics, Inc.

Mark Casciari, Ian Hugh Morrison, Sari M. Alamuddin, Seyfarth Shaw, Chicago, IL, for Defendant Houlihan, Lokey, Howard & Zukin, Inc.

Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendant Stephen P. Bartley.

Stephen Gay, Jeffrey Alan Ryva, Husch & Eppenberger LLC, Peoria, IL, for Defendant Lyle Dickes.

Jeffrey Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Defendant James Freid.

Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendant Dale Fujimoto.

John Elias, Robert Riffle, Cynthia Elias, Elias Meginnes Riffle & Seghetti, Peoria, IL, for Defendant William Gehring, Henry Gregory, II, John F. Halpin, James Kyle, John Lappegaard, George McKittrick, Clayton Patino, Jerry Rathmann, W. Thomas Stumb, Mark Swedlund, Leo Vanderlugt, Robert Wilson, Bruce Wright.

Jeffrey Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Defendant Richard Hodgson.

Dean Essig, Washington, IL, for Defendant Gregory McAllister.

Charles Roth, James Springer, Joseph Sudow, Kavanagh Scully Sudow White &

Frederick, Peoria, IL, for Defendants Michael Norbutas, Frederick Stuber, and for Defendant Ashley Anne Foster, as trustee or agent of the Ashley Anne Foster Irrevocable Trust, and Melvyn R. Regal, individually, as trustee or agent of the Steven Jay Regal Trust, as trustee or agent of the Judi Lynn Regal Trust, and as trustee or agent of the John E. Regal Trust.

### ORDER

MIHM, District Judge.

Now before the Court is Defendant A. Robert Pellegrino's ("Pellegrino") Motion for Summary Judgment on Count V. For the reasons set forth below, the Motion for Summary Judgment [# 424] is DENIED.

### FACTUAL BACKGROUND

The basic factual background has been sufficiently set forth in the prior orders of this Court, and familiarity therewith is presumed. The present motion is brought by Defendant Pellegrino seeking summary judgment on Count V of the First Amended Complaint which alleges that he was a fiduciary to the ESOP and breached that duty. In 1995, he was the President of F & G and a member of the F & G Board. Along with Thomas Foster ("Foster") and Melvyn Regal ("Regal"), Pellegrino was the third member of F & G's Executive Committee. He was also a director of MBC. The matter is now fully briefed and ready for resolution. This Order follows.

### DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995).

Plaintiffs assert that Pellegrino was a fiduciary to the ESOP and breached his duty as such by failing to disclose material information in connection with the 1995 ESOP transaction, among other things. A fiduciary is one who owes duties to the plan participants and beneficiaries; a fiduciary must exercise care, skill, prudence, and diligence in fulfilling those duties. 29 U.S.C. § 1104(a).

Under ERISA, an individual or entity can become a fiduciary in three ways: (1) being named as a fiduciary in the written plan instrument, 29 U.S.C. § 1102(a); (2) being named and identified as a fiduciary pursuant to a procedure specified in the written plan instrument, 29 U.S.C. § 1102(a)(2); or (3) meeting the definition of a fiduciary contained in 29 U.S.C. § 1002(21):

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Here, Plaintiffs do not claim that Pellegrino was a named fiduciary, but rather assert other bases for finding him a fiduciary with respect to the ESOP. They argue that Pellegrino was a fiduciary of the ESOP because he exercised *de facto* control over the plan assets, because as a member of the Executive Committee, he effectively maintained control as to whether and on what terms the ESOP transaction would go through until the closing on December 20, 1995. Plaintiffs also rely on *Newton v. VanOtterloo,* 756 F.Supp. 1121, 1129 (N.D.Ind.1991), *citing Leigh v. Engle,* 727 F.2d 113, 134 (7th Cir.1984), for the proposition that the power to appoint and remove plan fiduciaries can also make members of a board of directors fiduciaries because it involves exercising discretionary authority or control over the management

of the plan. Finally, Plaintiffs cite *Eaves v. Penn,* 587 F.2d 453, 459 (10th Cir.1978), for the proposition that an officer and director of a company who recommends, designs, and implements an ESOP transaction is an ERISA fiduciary.

Pellegrino responds that his status as an officer and director does not in and of itself make him a fiduciary of the ESOP. Specifically, he argues that he did not exercise any de facto control over the management of the plan or its investment decisions and that the Court should not be guided by *Engle* because that case involved the naming of administrators who had markedly conflicting interests in managing the trust's investments. Respectfully, the Court disagrees, at least for purposes of addressing this Motion.

As the Court has previously noted with respect to the fiduciary claims against Foster and Regal, ERISA ties fiduciary responsibilities to a person's actual authority, and therefore, that person is a fiduciary only "to the extent" that he or she exercises control or authority over the plan. *Engle,* 727 F.2d at 133.

For example, the board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise "discretionary authority or discretionary control respecting management of such plan" and are, therefore, fiduciaries with respect to the plan. However, their responsibility, and consequently their liability, is limited to the selection and retention of fiduciaries....

*Id.* at 133–34. Because Foster, Regal, and Pellegrino were undeniably fiduciaries with respect to the selection of U.S. Trust as successor trustee for the ESOP, the question here is not whether they were fiduciaries, but rather how far their fiduciary duties extended.

A fiduciary responsible for appointing a plan trustee or administrator has "a duty

to monitor appropriately" the actions of the appointed trustee or administrator. *Engle*, 727 F.2d at 135. Additionally, beyond this formal authority, the Seventh Circuit found that "ERISA directs courts to look beyond [the fiduciaries'] formal authority with respect to the plan, limited to selection and retention of administrators, and to consider what real authority they had over plan investments by virtue of their having appointed [the plan administrators.]" *Id.* at 135 n. 33. In that case, the court noted that by selecting the particular administrators that were selected, the fiduciary had obtained *de facto* control over plan investment decisions, which when the record is viewed in the light most favorable to the Plaintiffs, could be functionally analogous to what happened here.

■ In his capacity as a member of F & G's Board and Executive Committee, the record indicates that Pellegrino may have effectively exercised control over the structure and orchestration of the ESOP transaction through the closing on December 20, 1995. There is evidence suggesting that the Executive Committee participated in conceiving the concept for the transaction, soliciting the valuation opinions from Valuemetrics, and setting up the structure of the stock purchase transaction. It is also no secret that Foster pushed for this transaction to be consummated and that his desires were well-known to the other F & G officers and Board members.

In October 1995, the F & G Board adopted a resolution approving the concept of the proposed ESOP transaction and authorizing F & G's officers to take all steps necessary to complete the transaction and also authorizing the Executive Committee (including Pellegrino) to make changes and alterations to the transaction as they deemed necessary and proper. The Executive Committee then authorized the Vice Chairman or any Vice President to execute and deliver documents necessary to consummate the transaction. Regal, acting on behalf of the Executive Committee, then appointed U.S. Trust to replace Magna Bank as successor trustee of the ESOP. This was done possibly with the sole purpose of effectuating the stock purchase transaction, as Regal stated in his deposition that U.S. Trust had not been appointed as successor trustee prior to December 20, 1995, because there would have been no need to have U.S. Trust on board unless the ESOP transaction was going to go through. The construction of this statement is subject to more than one reasonable interpretation, one of which is that the selection of U.S. Trust as trustee for the ESOP was so inextricably intertwined with the desired end of effectuating the stock purchase transaction that the act of appointing the trustee essentially exercised *de facto* control over the plan's assets and management. Thus, the particular facts of this case make it readily distinguishable from the cases cited by Pellegrino, as his actions as part of the Executive Committee could constitute the "something more" than the mere holding of a corporate office or appointment power found to be insufficient to bestow fiduciary status over the distribution of plan assets in those cases.

Accordingly, the Court finds that the scope of Pellegrino's fiduciary duty was not necessarily limited to the mere appointment of U.S. Trust as the trustee of the ESOP and the corresponding duty of appropriate monitoring.[1] As recognized in

---

1. To the extent that the Court's November 18, 2002, Order suggests that the scope of Foster or Regal's fiduciary duty has been conclusively determined by this Court prior to trial, such suggestion was unintended. The Court found that the record was sufficient to support a reasonable conclusion that the selection of U.S. Trust as trustee was so inextricably intertwined with the desired end of effectuating

*Engle,* there are situations where the particular circumstances involved cause a fiduciary's liability to extend further than it might appear to extend on paper, and the Court concludes that this is potentially one of those situations. While Pellegrino's invitation to look simplistically at the power to appoint as the end of the story is attractive, to do so would be elevating form over substance and ignoring the Court's obligation to "look beyond" formal authority to the realities of the fiduciary relationship at issue. As the Court has previously stated, to hold otherwise would be to render the protections of ERISA meaningless, as ERISA's fiduciary liability provisions would have no meaning in the real world unless they are flexible enough to take cognizance of the different dynamics in which these transactions can occur.

Whether Pellegrino breached any fiduciary duty that he had with respect to the 1995 ESOP transaction remains to be resolved at trial. The Court notes that in this respect, the record suggests that Pellegrino's level of knowledge and involvement may have been different from the other two members of the Executive Committee. However, questions of this nature are plainly issues of fact involving assessments of credibility to be resolved at trial. Accordingly, to the extent that Pellegrino seeks summary judgment in this respect, his motion is denied.

Pellegrino next seeks a ruling that any fiduciary duty he may be found to have owed did not extend to the 1997 transaction. Specifically, he argues that since U.S. Trust was appointed in 1995 and the June 1997 transaction did not occur for nearly two more years, there is no way

that there could be any logical connection between the 1995 appointment and the June 1997 transaction. While the Court agrees that the factual basis for the exercise of *de facto* control over the plan's assets and management that the Court has found could establish a broader fiduciary duty on the members of the Executive Committee does not reasonably extend to the June 1997 transaction, the same cannot be said at this stage of the litigation for the corresponding duties of monitoring and retention that accompany the fiduciary role of appointing the plan trustee. Accordingly, summary judgment cannot appropriately be granted on this issue.

## CONCLUSION

For the reasons set forth above, Pellegrino's Motion for Summary Judgment [# 424] is DENIED.

---

the stock purchase transaction that the act of appointing the trustee effectively amounted to de facto control over the ESOP's assets and management. The Court further found that on the record in this case, the scope of Foster and Regal's fiduciary duties was not necessar-

ily limited merely to their appointment of U.S. Trust as trustee of the ESOP and the corresponding duty of appropriate monitoring. However, the Court did not attempt to define the precise scope of their fiduciary duties, which remains to be determined at trial.